# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  17-cv-22714-BB

MAINSTREAM ADVERTISING, INC.,

      Plaintiff,

v.

MONIKER ONLINE SERVICES, LLC,

      Defendant.

_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Moniker Online Services, LLC's Motion to Dismiss Plaintiff Mainstream Advertising, Inc.'s Second Amended Complaint (the "Motion").  *See* ECF No. [45]. The Court has considered the Motion, Plaintiff's Response, and Defendant's Reply.  For the reasons that follow, the Motion is granted in part and denied in part.

## I.    BACKGROUND[1]

Plaintiff is a California company that provides a variety of online advertising services.  *See* ECF No. [44], at ¶¶ 1, 7.  One of the ways Plaintiff monetizes its online advertising services is through its select registration and holding of domain names.  *See Id.* at ¶ 8.  Once Plaintiff acquires a desired domain name, it creates a site containing advertising content that includes

---

[1] In its Second Amended Complaint, Plaintiff makes reference to other court proceedings involving the same parties.  District courts "may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment."  *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). The Court notes that judicial notice of the other court proceedings is proper, as they are public records that are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

links to good and services. *See Id.* These links direct visitors to Plaintiff's clients. *See Id.* Plaintiff is then compensated for the online referral. *See Id.*

In and around 2004 to 2005, Plaintiff engaged Defendant, a Florida company, to acquire and host domain names for Plaintiff's online advertising business. *See Id.* at ¶¶ 2, 9. The parties entered into a "Registration Agreement," which was updated by Defendant in November 2008 and August 2013. *See Id.* at ¶ 12. Throughout their contractual relationship, Plaintiff maintained "hundreds of thousands" of internet domain names through Defendant's registration and hosting services, including domain names that utilize Plaintiff's federally-registered trademarks and service marks. *Id.* Some of these trademarks include, but are not limited to, "colo.com," "yellowpagesonline.com," "currentaffair.com," "mainstreamadvertising.com," "cashnews.com," and "vortals.com." *See Id.* at ¶¶ 11–12.

Around early 2012, Defendant also entered the online traffic advertising business, leading to "direct competition" with Plaintiff in the "online marketing space." *See Id.* at ¶¶ 13–14. Then, in March 2016, Defendant advised Plaintiff that it would be taking 118 of Plaintiff's domain names, including some over which Plaintiff holds trademarks, as a result of a payment dispute between the parties. *See Id.* at ¶ 16. According to Plaintiff, the value of the 118 domain names that were seized far exceeded the amount of money Defendant claimed was due as a result of the payment dispute. *See Id.*

These differences led to Plaintiff filing suit against Defendant in this Court for Breach of the Registration Agreement, Breach of the Implied Covenant of Good Faith and Fair Dealing, Conversion, Unjust Enrichment, and Trademark Infringement. *See Id.* at ¶ 17; *see also Mainstream Advertising, Inc. v. Moniker Online Services, LLC*, Case No. 16–cv–61316–BB ("*Mainstream I*"), ECF No. [43]. On September 29, 2016, ten days after filing the Amended

Complaint, counsel for Plaintiff filed a Motion to Withdraw. *See* ECF No. [44], at ¶ 18; *see also Mainstream I*, ECF No. [44]. The Court granted the motion and extended the dates by which Plaintiff had to retain new counsel on four separate occasions. *See Mainstream I*, ECF Nos. [45], [50], [51], [53] (October 20, 2016; October 28, 2016; November 14, 2016; and November 23, 2016).

Defendant, meanwhile, filed an Answer and Counterclaim to the Amended Complaint on November 3, 2016, alleging Breach of Contract, Account Stated, Open Account, and Quantum Meruit. *See* ECF No. [44], at ¶ 18; *see also Mainstream I*, ECF No. [52]. On November 30, 2016, the Court dismissed Plaintiff's Amended Complaint without prejudice for failing to retain counsel despite the Court's four orders to do so. *See* ECF No. [44], at ¶ 18; *see also Mainstream I*, ECF No. [55]. Because Plaintiff also failed to answer or otherwise respond to Defendant's Counterclaim,[2] Defendant moved for the Clerk's Entry of Default, which was entered on December 1, 2016. *See Mainstream I*, ECF Nos. [57], [58]. After Defendant filed a Motion for Entry of Final Judgment after Default, the Court entered a Final Default Judgment against Plaintiff on December 23, 2016 for a sum totaling $294,485.84. *See* ECF No. [44], at ¶¶ 18–19; *see also Mainstream I*, ECF Nos. [63], [67]. On April 17, 2017, the Court adopted Judge Alicia O. Valle's Report and Recommendation granting Defendant's Motion for Attorneys' Fees and awarded Defendant $77,772.50 in attorneys' fees and $115.21 in costs. *See* ECF No. [44], at ¶ 21; *see also Mainstream I*, ECF No. [86].[3]

---

[2] The Court had an independent basis for jurisdiction over the Counterclaim, as the parties were diverse and the amount in controversy surrounding Defendant's breach of contract claims was over $75,000.

[3] Plaintiff also alleges that the value of the domain names Defendant is still in possession of is more than sufficient to satisfy the amounts awarded to Defendant in the Final Default Judgment and order granting attorneys' fees and costs. *See* ECF No. [44], at ¶¶ 25–27.

According to the Second Amended Complaint, Defendant appropriated Plaintiff's trademarks by taking Plaintiff's domain names for Defendant's use. *See* ECF No. [44], at ¶ 28. Specifically, Plaintiff alleges that Defendant:

(1) Transferred the registered domain names "yellowpagesonline.com" and "currentaffair.com" to itself. When clicking on either domain name, users will suffer a virus attack, "causing damage to [Plaintiff's] trademarked reputation";

(2) "Hijacked" the registered domain name "mainstreamadvertising.com" from Plaintiff's account and did not renew the domain name, allowing it to be registered by DropCatch.com and placed for sale by HugeDomains.com;

(3) Sold the registered domain name "vortals.com" to Digital Domains MEPE (registered now through Epik, Inc.) and listed "cashnews.com" for sale.

*See Id*. at ¶¶ 29–31. Following the entry of the Final Default Judgment, Defendant began initiating collection actions in various courts. For instance, after obtaining the Final Default Judgment in this Court, Defendant proceeded to initiate *ex parte* proceedings in the Circuit Court for the City of Alexandria, Virginia. *See Id*. at ¶ 37. Nevertheless, Plaintiff contends that Defendant did so without complying with Federal Rule of Civil Procedure 69, or Florida Statute Chapters 55 and 56 relating to the execution of judgments. *See Id*. at ¶ 36. Defendant then obtained the appointment of a Special Receiver and orders from the Virginia state court in June 2017 ordering the sale at auction of a portfolio of domain names to partially satisfy the Final Default Judgment entered in this Court. *See Id*. at ¶ 37. However, in July 2017, the Virginia state court ordered Defendant to restore the domain names and reverse all actions taken pursuant to the June 2017 orders. *See Id*. at ¶ 39; *see also* ECF No. [44–4], at 21–28. Plaintiff contends that Defendant has refused to comply with the Virginia state court's orders; as a result,

Defendant continues to "hold and receive income from at least 1840 domain names" that were ordered to be returned. *See* ECF No. [44], at ¶¶ 40–42.

Defendant also initiated proceedings in the United States District Court for the Northern and Central Districts of California to collect on the Final Default Judgment, despite failing to comply with Fed. R. Civ. P. 69 or Fla. Stat. §§ 55, 56. *See Id*. at ¶¶ 45, 48. The Northern District "denied [Defendant's] motions for seizure [of Plaintiff's domain names] and directed [Defendant] to limit its action to [sic] issuance of a writ of execution." *See Id*. at ¶ 47. The Central District also denied Defendant's "requests for ex parte seizure orders." *See Id*. at ¶ 49.

Meanwhile, on July 17, 2017, a new firm entered an appearance in *Mainstream I* on behalf of Plaintiff and filed a Second Amended Complaint. *See Mainstream I*, ECF Nos. [87], [88]. Defendant responded with a Motion to Strike, which was granted by the Court on July 24, 2017, because the Second Amended Complaint was filed without leave of Court and despite the case having been closed on December 23, 2016. *See Mainstream I*, ECF No. [90]. On July 20, 2017, however, Plaintiff filed a new complaint in a new action—the one presently before the Court. *See* ECF No. [1]. Plaintiff's new Complaint brought the same five claims against Defendant as the Complaint and Amended Complaint in *Mainstream I*. *Compare* ECF No. [1], *with Mainstream I*, ECF Nos. [1], [43]. On August 11, 2017, Plaintiff filed its Amended Complaint with the Court, alleging one count for trademark infringement against Defendant. *See* ECF No. [6].[4] On August 25, 2017, Defendant filed a motion to dismiss, arguing that the Amended Complaint should be dismissed under *res judicata*, collateral estoppel, and for failure

---

[4] On September 5, 2017, Plaintiff filed a Corrected and Amended Motion to Set Aside Default Judgment in *Mainstream I*. *See Mainstream I*, ECF No. [94]. The first motion to set aside, which was filed three days earlier, did not comply with this Court's Local Rules. *See Mainstream I*, ECF No. [93]. After responses and replies were filed, but before the Court could rule on the motion, Defendant filed a Suggestion of Bankruptcy against Plaintiff in the United States Bankruptcy Court for the Central District of California. *See Mainstream I*, ECF No. [106]. The proceedings in *Mainstream I* have accordingly been stayed until the bankruptcy court grants relief from the stay. *See Mainstream I*, ECF No. [107].

to properly state a claim for trademark infringement. *See* ECF No. [9]. The Court granted the motion in part, finding that Plaintiff had not pled enough factual content to determine precisely how Defendant, an internet domain registrar, had infringed upon its trademarks. *See* ECF No. [39]. Plaintiff was provided leave to amend. *See Id.*

On January 3, 2018, Plaintiff filed its Second Amended Complaint, bringing forth claims for trademark infringement under 15 U.S.C. § 1114 (Count I); Wrongful Garnishment/Seizure (Count II); Abuse of Process (Count III); Conversion (Count IV); and Accounting (Count V). *See* ECF No. [44], at 15–27. On January 17, 2018, Defendant filed the present Motion. *See* ECF No. [45]. Plaintiff filed its response on February 19, 2018, *see* ECF No. [48], and Defendant filed its reply on February 26, *see* ECF No. [49]. The Motion is ripe for consideration.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint, or a portion thereof, for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a Rule 12(b)(6) motion to dismiss. *See Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). While courts may make reasonable inferences in a plaintiff's favor, they are not required to draw the

plaintiff's inference. *See Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009). Finally, the Court's "analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (citation omitted).

## III. DISCUSSION

Defendant has moved to dismiss the entirety of Plaintiff's Second Amended Complaint. The Court will address Defendant's arguments as they pertain to each count.

### A. Trademark Infringement under 15 U.S.C. § 1114.

Defendant contends that Plaintiff has failed to state a claim for trademark infringement because Plaintiff (1) does not have registered trademarks for the domain names specified in the Second Amended Complaint and (2) has not alleged any infringing activity by Defendant. *See* ECF No. [45], at 7–10. The Court disagrees with both of Defendant's contentions.

Trademark infringement under 15 U.S.C. § 1114(1)(a) prohibits any person from the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." Thus, in order to prevail on a trademark infringement claim based on a federally registered mark, "the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007).

Defendant argues that Plaintiff's trademark infringement claim must be dismissed because Plaintiff does not in fact have federally registered trademarks for the six domain names

at issue. *See* ECF No. [45], at 9–10. Specifically, Defendant states that "some [of the six trademarks] never belonged to Plaintiff and of those that did, all but one are abandoned." *Id.* at 9. Defendant, however, has not presented the Court with any evidence that the six domain names have or have not been registered, or that they have been abandoned or cancelled by Plaintiff.[5] In the absence of such proof, the Court must, on a motion to dismiss, take Plaintiff's allegations that it has trademarks for the six domain names as true. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Thus, Defendant's first argument fails.

Defendant next argues that Plaintiff has failed to describe "a single act of infringing activity" by Defendant in relation to the six domain names. *See* ECF No. [45], at 8. Defendant is correct that a domain name registrar's mere use of domain names to designate host computers on the internet "is the type of purely 'nominative' function that is not prohibited by trademark law." *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 957 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999) ("This is not to say that a domain name can never be used to infringe a trademark. However, something more than the registration of the name is required before the use of a domain name is infringing.").

Plaintiff, though, has alleged use of its trademarked domain names by Defendant beyond their mere registration. In particular, Plaintiff states that Defendant has sold "mainstreamadvertising.com" and "vortals.com," placed "cashnews.com" for sale, and damaged Plaintiff's reputation after transferring "yellowpagesonline.com" and "currentaffair.com" to

---

[5] The Court, for instance, may take judicial notice of federal trademark registrations. *See It's a 10, Inc. v. Beauty Elite Grp., Inc.*, No. 13–60154–CIV, 2013 WL 6834804, at *12 (S.D. Fla. Dec. 23, 2013) (stating that exhibit comprised of "a pair of federal trademark registrations" was "susceptible to judicial notice"). The Court further notes that defendants bear a strict burden of proof to demonstrate abandonment of a trademark. *See Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1174 (11th Cir. 2002). Defendant's allegations that Plaintiff has abandoned its marks, without more, are not sufficient to establish that Plaintiff has discontinued its use of its trademarks "*with intent not to resume such use.*" 15 U.S.C. § 1127 (emphasis added).

itself, as unwary users now suffer a virus attack upon clicking on either "yellowpagesonline.com" and "currentaffair.com." *See* ECF No. [44], at 16–17. Because Plaintiff has alleged that Defendant has engaged in activity beyond the mere registration of its trademarked domain names, Plaintiff has pled sufficient facts, accepted as true, to state a claim for trademark infringement under 15 U.S.C. § 1114.[6]

###### B.    Wrongful garnishment/seizure.

Defendant argues that Plaintiff's wrongful garnishment claim should be dismissed because Defendant followed the proper procedures under Virginia law when it sought to execute on the Final Default Judgment in that state. *See* ECF No. [45], at 10–11. Specifically, Defendant claims that:

> '[M]atters of attachment, execution and the like are to be determined by the law of the forum and not the law of the place where judgment was rendered or a debt contracted.' *United States v. Miller*, 229 F.2d 839, 841 (3d Cir. 1956) . . . . In fact, a florida [sic] court lacks jurisdiction to garnish goods or funds outside the state of Florida. . . . *Stansell v. Revolutionary Armed Forces of Colombia*, 149 F. Supp. 3d 1337, 1340 (M.D. Fla. 2015) ("nothing in the language of the Florida garnishment statutes suggests that they were intended to have extraterritorial application."). The fact that Defendant filed a suit for injunction and or garnishment in another state where property rights were located does not constitute an abuse of garnishment . . . .

*Id*. Defendant is correct in that it did not have to follow Florida law when executing on a judgment in another jurisdiction. The issue before the Court, however, is not whether Defendant followed the proper garnishment procedures or if this Court has jurisdiction to garnish out-of-state funds. Rather, the question is whether Defendant is liable for the *tort* of wrongful garnishment when it sought to execute on the Final Default Judgment in California and Virginia. While Plaintiff has alleged that Defendant failed to follow the Federal Rules of Civil Procedure

---

[6] Plaintiff has failed, for the second time, to state how Defendant is utilizing its trademarked "colo.com" domain name. *See* ECF No. [39], at 15–16. Accordingly, Plaintiff's claim that Defendant is infringing upon its "colo.com" domain name is **DISMISSED**.

and Florida's garnishment statutes, Plaintiff has also alleged that Defendant is liable for wrongful garnishment for, among other things, submitting false affidavits to the Virginia state court and initiating proceedings in California even though the Virginia court ordered Defendant to return certain domain names it had seized pursuant to an earlier order by the Virginia court. *See* ECF No. [44], at 19–22. Under Florida law, a plaintiff must establish the following six elements to state a claim for wrongful garnishment: "(1) the defendant commenced or continued a proceeding against the plaintiffs, (2) the defendant was the legal cause of that proceeding, (3) the plaintiffs received a 'bona fide termination' of the proceeding in their favor, (4) the defendant did not have 'probable cause' for the proceeding, (5) the defendant acted with 'legal malice'; and (6) the plaintiffs suffered damages." *See Barniv v. BankTrust*, 579 F. App'x 719, 720 (11th Cir. 2014) (*citing Adams v. Whitfield*, 290 So. 2d 49, 51 (Fla.1974)). Defendant has not engaged in an analysis of whether Plaintiff's allegations meet these six elements. Accordingly, Defendant has not established that Plaintiff has failed to state a claim for wrongful garnishment.

## C.     Abuse of process.

In Count III of the Second Amended Complaint, Plaintiff brings forth a claim for abuse of process in connection with Defendant's actions in the Virginia state court and the Northern District Court of California. *See* ECF No. [44], at 22–24. "A cause of action for abuse of process contains three elements: (1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage." *S & I Investments v. Payless Flea Mkt., Inc.*, 36 So. 3d 909, 917 (Fla. 4th DCA 2010). "The plaintiff must prove that the process was used for an immediate purpose other than that for which it was designed." *Id*. "Where the process was used

to accomplish the result for which it was intended, '*regardless of an incidental or concurrent motive of spite or ulterior purpose*,' there is no abuse of process." *Id*. (emphasis in original) (*quoting Biondo v. Powers*, 805 So. 2d 67, 69 (Fla. 4th DCA 2002)). "[T]he mere filing of a complaint and having process served is not enough to show abuse of process." *Id*. "In other words, the usual case of abuse of process involves some form of extortion." *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984). "The plaintiff must prove improper use of process *after* it issues." *S & I Investments*, 36 So. 3d at 917 (emphasis added).

Most of Plaintiff's allegations supporting its abuse of process claim, however, regard actions taken by Defendant prior to the initiation of the proceedings in Virginia and California. *See* ECF No. [44], at 22–24 (reiterating its allegations that Defendant did not comply with garnishment requirements prior to seeking execution of the Final Default Judgment, claiming that Defendant "initiated ex parte proceedings in the Virginia" state court, and "causing process to be issued" in the Northern District of California). While Count III does contain allegations that Defendant obtained the appointment of a Special Receiver and the transfer of domain names in the Virginia state court proceedings, these allegations do not support a conclusion that Defendant sought these orders to accomplish any "immediate purpose" other than to garnish assets in efforts to collect on the Final Default Judgment.

Plaintiff seems to concede this point. In its response, rather than argue that process was not "used to accomplish the result for which it was intended, regardless of an incidental or concurrent motive of spite or ulterior purpose," *S & I Investments*, 36 So. 3d at 917 (internal quotations omitted), Plaintiff asks the Court to allow it to proceed on a claim for malicious

prosecution instead.[7] *See* ECF No. [48], at 10 ("Whether the action is considered more in the nature of malicious prosecution, it should not be dismissed for its misnomer . . . . At the very minimum, [Plaintiff] should be permitted to allege both abuse of process and malicious prosecution . . . .").

Plaintiff cites to *Yoder v. Adriatico*, 459 So. 2d 449 (Fla. 5th DCA 1984), in support of its request. In *Yoder*, the defendants were awarded damages on their counterclaim for abuse of process. *See Id.* at 450. On appeal, the Florida Fifth District Court reversed after finding it "readily apparent that the action for 'abuse of process' [was] actually one for malicious prosecution." *Id.* In doing so, the Fifth District Court rejected the defendants' argument that the plaintiffs waived any objection to the claim for malicious prosecution by failing to raise the objection at the trial level because "the primary fault for injecting this inapplicable tort into the trial below" rested with the defendants, who "insisted, throughout the lower court proceedings, on characterizing the filing . . . as abuse of process." *Id.* at 451.

Like the defendants in *Yoder*, it is Plaintiff who is solely responsible for mischaracterizing his claim. Because Plaintiff has already been provided with an opportunity to amend its complaint and its allegations do not prove that Defendant improperly used process in the California and Virginia proceedings after process was issued, Plaintiff's abuse of process claim is dismissed.[8]

### D. Conversion and Accounting.

---

[7] "The tort of malicious prosecution is concerned with maliciously causing process to issue, whereas the tort of abuse of process is concerned with the improper use of process after it issues." *Yoder v. Adriatico*, 459 So. 2d 449, 450 (Fla. 5th DCA 1984).

[8] Defendant also argued that Plaintiff's claim for abuse of process is barred by Florida's litigation privilege. *See* ECF No. [45], at 12. The Court need not reach this argument.

Defendant also argues that Counts IV and V for Conversion and Accounting, respectively, should be dismissed under the doctrines of *res judicata* and collateral estoppel.[9] *See* ECF No. [45], at 13–14. Defendant, however, has not provided the Court with any factual or legal analysis of these principles and how they apply to the case at hand. *See Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1345 (S.D. Fla. 2015) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The Court] will not do his research for him.") (*citing Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.)). For instance, Defendant has failed, for purposes of *res judicata*, to "compare the factual issues explored in the first action with the factual issues to be resolved in the second." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1302 (11th Cir. 2001). Defendant's argument is denied.

## IV. CONCLUSION

Defendant has not met its burden to warrant the dismissal of Plaintiff's trademark infringement, wrongful garnishment, conversion, and accounting claims. Nevertheless, the Court finds that Plaintiff has failed to state a claim for abuse of process. Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, **ECF No. [45]**, is **GRANTED IN PART** and **DENIED IN PART**. It is **FURTHER ORDERED** that:

(1) Plaintiff's claim in Count I that Defendant has infringed on its "colo.com" trademark is **DISMISSED**.

(2) Count III, Plaintiff's abuse of process claim, is **DISMISSED**.

---

[9] "While *res judicata* bars the relitigation of claims, collateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998).

**(3)** The Defendant shall file an Answer to the remaining claims in the Second Amended

Complaint **no later than May 3, 2018.**

**DONE AND ORDERED** in Miami, Florida this 23rd day of April, 2018.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record